IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COVER FOUR, L.L.C., | § | |
| Plaintiff, | § § § | |
| v. | § § | No. 3:07-CV-661-M |
| CARDIAC SCIENCE CORPORATION, | § § § | |
| Defendant. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Amend and Defendant's Motion to Compel Arbitration and Dismiss. Plaintiff's Motion to Amend is **GRANTED**. The Court analyzes Defendant's Motion to Compel Arbitration based on claims in the Amended Complaint. The Motion to Compel Arbitration is **GRANTED**, and the case is **DISMISSED**.

### BACKGROUND

Plaintiff Cover Four, L.L.C., a distributor of medical devices, initially sued Cardiac Science Corporation, a manufacturer of cardiology products, for breach of contract and negligent misrepresentation. Plaintiff alleges that the Defendant misrepresented the safety, efficacy, and merchantability of its defibrillation devices. Defendant seeks to require arbitration pursuant to a contract executed by the parties on or about January 12, 2006. On May 29, 2007, Plaintiff filed a Motion seeking to amend its Complaint. The proposed Amended Complaint adds counts of fraud, violations of the Texas Deceptive Trade Practices Act, negligence, breach of the duty of good faith and fair dealing, and unjust enrichment, and seeks a declaratory judgment.

**MOTION FOR LEAVE TO AMEND COMPLAINT**

Fed. R. Civ. P. 15(a) directs that "leave to amend be freely given when justice so requires." As the Fifth Circuit held in *Dussouy v. Gulf Coast*, "[t]he policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." 660 F.2d 594, 598 (5th Cir. 1981). A substantial reason, such as undue delay, bad faith, dilatory motive on the part of the movant, or undue prejudice to the non-movant, will warrant denial.

Here, Defendant's Opposition to Plaintiff's Motion for Leave is generally based not on the *Dussouy* factors but rather on a contention that a dispositive defense renders the amendments futile, or that Plaintiff's factual allegations are insufficient to sustain the new claims. The Court declines to now find the new claims futile as a matter of law. *See Dussouy*, 660 F.2d at 598 ("[W]here . . . the only proffered justification for denial is futility, the determination that the complaint is legally sufficient and not cumulative deprives the district court of all 'substantial reason' to deny leave and severely restricts its discretion to do so.").

The Court thus turns to the second basis for denial, which requires the Court to evaluate the proposed Amended Complaint for compliance with the pleading standard recently announced in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007).

In *Bell Atlantic*, the Supreme Court made clear that a plaintiff must plead factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." *Bell Atlantic* established a "threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" Further, Fed. R. Civ. P. 9(b) requires that the circumstances constituting fraud or mistake shall be stated with particularity. This includes pleading the time, place, and contents of the false representations, as well as the identity of the person making

the representation and what the [the person] obtained thereby. A recognition of the damage potentially wrought by allegations of fraud, coupled with Congress's desire to deter "unsubstantiated charges of fraud," explains this higher standard of pleading. *Guidry v. Bank LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992); *Tuchman v. DSC Commc'ns Corp.*, 818 F.Supp. 971, 977 (N.D. Tex. 1993).

Defendant maintains that Plaintiff does not plead its fraud-based claims with sufficient particularity. Texas law defines fraud as a knowing or reckless material misrepresentation, made with the intention of inducing reliance on the statement. *In re First Merit Bank*, *N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiff's injury must flow from its reasonable reliance on the misrepresentation. The Court concludes that the proposed Amended Complaint contains factual allegations sufficient to sustain Plaintiff's fraud claims.

Plaintiff alleges that Defendant made at least three distinct material misrepresentations to the Plaintiff. First, Defendant is alleged to have falsely represented, both before and after execution of the contract, that its Powerheart automated external defibrillator 9300E and 9300A series ("AED") devices were merchantable and suitable for their intended use. Proposed First Amended Complaint ("Prop. Am. Compl.") ¶ 15.

Second, Plaintiff claims that Defendant's technician assured Plaintiff that the warnings displayed on its devices could be safely disregarded, despite the AED Operation and Service Manual's clear notice that such warnings potentially signaled that the device was malfunctioning. Prop. Am. Compl. ¶ 17. Third, Plaintiff pleads that, both before and after execution of the contract, Defendant represented that it had complied with FDA disclosure requirements, when it had knowledge of at least two incidents involving defective operation of the AED, which it did not timely disclose to the FDA. Prop. Am. Compl. ¶ 17.

Plaintiff's allegations support a plausible inference that the material misrepresentations were

made to it by the Defendant with the intention of inducing the Plaintiff to execute, and subsequently renew, its distribution contract with Defendant, that Plaintiff reasonably relied on such representations and was thereby induced to invest heavily in performing the contract and to renew it, and that it was injured as a result. The Court therefore concludes that Plaintiff's proposed Amended Complaint alleges particularized facts sufficient to sustain Plaintiff's claim for relief. The Motion to Amend is therefore **GRANTED**.

## MOTION TO COMPEL ARBITRATION

A two-step analysis governs motions to arbitrate. First, a court determines whether the parties agreed to arbitrate their disputes, and whether the agreement encompasses the dispute between the parties. *Fleetwood Ent. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Second, a court evaluates whether the agreement to arbitrate is, nonetheless, invalid for "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006); *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Court concludes that a valid arbitration clause controls the dispute between the parties.

### *A. Scope of the Arbitration Agreement*

The first issue is whether the parties agreed to arbitration of the instant dispute. The January 12, 2006 Non-Exclusive Distribution Agreement ("Agreement") provides, in Section 9.3, entitled "Arbitration," that: "[a]ny controversy or claim arising out of or relating to this Agreement or its breach shall be settled by binding arbitration" in Orange County, California. As a matter of general approach, federal courts apply an expansive construction of arbitration agreements. *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (quoting *Volt Information Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989)); *accord*

*Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). Indeed, the scope of an arbitration agreement is to be liberally construed. *Rojas v. TK Communications*, 87 F.3d 745, 749 (5th Cir. 1996).

The text of the arbitration clause in Section 9.3 of the Agreement, focusing on claims or controversies *arising out of or relating to this Agreement or its breach*, embraces a sweeping range of potential disputes, reaching any conduct or claims logically connected to the written contract. *See Rojas*, 87 F.3d at 749 (liberally construing similar language requiring submission of "any action contesting the validity of this Agreement, the enforcement of its financial terms, or any other disputes" to arbitration).

In its Response to the Motion, Plaintiff insists that the location of the arbitration clause under Section 9, entitled *Confidentiality,* objectively manifests the parties' intent to limit arbitration to disputes over confidentiality. The Court disagrees. The caption of the general section in which the arbitration clause is found will not supersede its plain meaning. *See Stanley v. Safeco Ins. Co. of America*, 109 Wash.2d 738, 742 (1998) (refusing to "focus[] on the heading or caption of the coverage page as limiting the operative words in the body" of an agreement); *National Indem. Co. v. Giampapa*, 65 Wash.2d 627, 633) (1965) ("A caption should never of itself be taken to override the intention of the parties to an insurance policy as shown by the provisions and clauses inserted thereunder."). Here, the Court finds that the language of the provision unambiguously prescribes the universe of arbitritable claims, and the Court concludes that it not reasonably limited to disputes over confidentiality.

The broad arbitration clause in the Agreement embraces each of the causes of action detailed in Plaintiff's Amended Complaint. Two core factual predicates undergird these causes of action: (1) Defendant made false representations and failed to disclose material facts about its product, in an

effort to induce Plaintiff to enter into the Agreement; and (2) Defendant failed to tender merchantable goods to the Plaintiff.

Plaintiff's fraud-related claims clearly *relate* to the Agreement and, therefore, are arbitrable. Indeed, Plaintiff alleges that Defendant's false statements were directed at inducing Plaintiff to enter into the Agreement. Further, Supreme Court and Fifth Circuit precedent interpreting similar arbitration agreements recognize the arbitrability of fraudulent inducement and misrepresentation allegations. *Moses H. Cone Memorial Hospital*, 460 U.S. at 5, n.2 (finding fraudulent inducement claim arbitrable under clause providing, "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration"); *Prima Paint Corp.*, 388 U.S. at 406 (arbitration agreement providing that "any controversy or claim arising out of relating to this Agreement, or the breach thereof" is "easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement were procured by fraud."); *Bhatia v. Johnson*, 818 F.2d 418-19, 422 (5th Cir. 1987) (agreement subjecting to arbitration "any controversy" between the parties "arising out of or relating to this agreement or breach thereof" encompassed Plaintiff's allegations of misrepresentation during negotiations of the entire contract).

Similarly, claims related to the second factual predicate – that Defendant failed to tender suitable goods – *arise out* of the Agreement, because the goods delivered are alleged not to have conformed to the terms of the Agreement. Accordingly, the arbitration clause embraces all claims enumerated in Plaintiff's Amended Complaint.

### *(B) Validity*

The next issue is whether any grounds exist at law or in equity for the revocation of the arbitration agreement. 9 U.S.C. § 2 (2006). The Federal Arbitration Act ("FAA") provides that a

"written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Indeed, written arbitration clauses are presumptively valid. *See, e.g.*, *Mitsubishi Motors Corp.*, 473 U.S. at 625. This presumption of validity promotes the underlying objectives of the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000). The generally liberal policy favoring federal enforcement of arbitration agreements also emanates from a respect for private contractual arrangements. *Mitsubishi Motors Corp.*, 473 U.S. at 625. Hence, arbitration agreements are generally enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006).

Consistent with the FAA's express aims, attacks upon the validity or legality of the entire contract, rather than the arbitration clause in particular, are unavailing.

> [W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator. Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.

*Will-Drill*, 352 F.3d at 218; *accord Buckeye Check Cashing, Inc.*, 546 U.S. at 449; *Prima Paint Corp.*, 388 U.S. at 403-04. To determine whether a defense presents a general challenge to the validity of the entire contract, or a narrow attack confined to the arbitration clause, a party's characterization of its own claim is not dispositive. *See Rojas*, 87 F.3d at 749.

Here, Plaintiff attacks the validity of the arbitration clause on multiple grounds. It insists that the written Agreement was unenforceable for four reasons: first, that the Plaintiff possessed minimal

bargaining power, financial resources, and experience; second, that the Defendant adopted a take-it-or-leave-it negotiating posture; third, that the forum designation clause was substantively unconscionable; and finally, that the arbitration clause was too inconspicuous to permit enforcement.

Plaintiff's first defense to enforcement is one of inequitable bargaining power. To avoid referral of this issue to arbitration, Plaintiff fashions this defense as an attack on the arbitration clause specifically, rather than on the contract generally. Response ¶ 21; *see generally Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997). However, in *Rojas*, the Fifth Circuit squarely rejected an identical defense. 87 F.3d 745 at 749, n.3. There, the Plaintiff similarly characterized her "inequality of bargaining power" defense as an attack exclusively on the arbitration clause, but the court concluded that "her attack is directed at the entire agreement" and, therefore, subject to arbitration.

Plaintiff's attempt to depict its attack as confined to the arbitration clause, rather than the entire contract, fails for other reasons as well. There is no evidence that the Defendant leveraged its allegedly superior bargaining power with respect to the arbitration clause in particular. Indeed, Plaintiff transmitted to Defendant a thirty-one item list of contested contractual provisions, but made no mention of the arbitration clause. The Court concludes that Plaintiff's defense encompasses the entire contract, not just the arbitration clause, and that it is therefore not a valid basis for avoiding arbitration.

The logic of *Rojas* similarly disposes of Plaintiff's second contention -- that Defendant's take-it-or-leave it negotiating posture created an unenforceable contract of adhesion. In *Rojas*, the Fifth Circuit found that an identical claim is "an attack on the formation of the contract generally, not an attack on the arbitration clause itself." *Rojas*, 87 F.3d at 749. Thus, Plaintiff's second contention is not a basis for avoiding arbitration.

Plaintiff, which has its principal place of business in Dallas, Texas, next contends that the designation of Orange County as the arbitration forum would impose on it prohibitive litigation costs, and is thus substantively unconscionable. The Court reaches the merits of this defense, which specifically attacks the validity of the arbitration clause. *See Prima Paint Corp.,* 388 U.S. at 403-04.

The Supreme Court's decision in *Green Tree Financial Corp. v. Randolph* is fatal to Plaintiff's substantive unconscionability defense. 531 U.S. at 91 n.6. There, the Plaintiff sought to invalidate an arbitration clause as substantively unconscionable, insisting that the arbitration costs would be prohibitively expensive. There, Plaintiff offered no evidence of her limited financial means or the projected cost of arbitration. Observing that "these unsupported statements provide no basis on which to ascertain the actual costs and fees to which she would be subject in arbitration," the Court rejected Plaintiff's unconscionability defense.

Here, Plaintiff's unconscionability defense hinges on two unsupported contentions: (1) the designated forum is more advantageous to Defendant than Plaintiff; and (2) arbitrating in the designated forum would "certainly be cost prohibitive to the Plaintiff." Turning to the first claim, the designated forum's proximity to Defendant's office in Lake Forest, California does not render a duly executed arbitration agreement unconscionable. Certainly, physical proximity to the litigation forum is not so advantageous to the Defendant, or unfair to the Plaintiff, as to "shock the conscience." *Slaughter v. Stewart Enterprises, Inc.*, 2007 WL 2255221, No. C 07-01157 MHP, *10 (N.D. Cal. 2007). Further, Plaintiff fails to adduce any specific evidence that litigating in Orange County would be prohibitively expensive. The Court finds no basis, therefore, for invalidating this provision of the arbitration clause.

Finally, Plaintiff insists that the arbitration clause was inconspicuous and thus unenforceable. The Court also reaches the merits of this defense, which specifically attacks the arbitration clause.

Section 9.3 is in a font identical to the other contract terms, occupies twelve lines of text, and is contained in a contract only nine pages long. Plaintiff was apparently given substantial time to review the proposed agreement. No evidence is before the Court that unreasonable deadlines or time constraints were imposed on the Plaintiff. In fact, Plaintiff's thirty-one item negotiating list reveals its painstaking scrutiny of the Agreement. The Court, therefore, rejects Plaintiff's claim that the arbitration clause is insufficiently conspicuous to be enforceable.

## CONCLUSION

Plaintiff's request for leave to file its Amended Complaint is **GRANTED**. For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**, and the case is **DISMISSED**.

**SO ORDERED** this 3rd day of December 2007.

_____
**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**